

I N T H E

# Court of Appeals of Indiana

Coltin D. Herzog,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*



FILED

Aug 07 2026, 9:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

August 7, 2026

Court of Appeals Case No.
25A-CR-3168

Appeal from the DeKalb Superior Court

The Honorable Patrick L. Jessup, Judge

Trial Court Cause No.
17D02-2405-MR-000002

**Opinion by Judge Felix**
Chief Judge Tavitas and Judge Bradford concur.

**Felix, Judge.**

## Statement of the Case

During an arranged drug buy, minors Blake Boese and T.J. stole a bag of drugs from Coltin Herzog's minor brother Grayson Aronen, so Herzog chased after the teens to recover the bag and stabbed Boese, killing him. Herzog was convicted of voluntary manslaughter and sentenced to 28 years of incarceration. Herzog now appeals and raises three issues for our review:

1. Whether the State presented sufficient evidence to rebut Herzog's claim of self-defense;
2. Whether the trial court abused its discretion in identifying mitigating factors; and
3. Whether Herzog's sentence is inappropriate under Indiana Appellate Rule 7(B).

We affirm.

## Facts and Procedural History

In May 2024, Herzog was on criminal probation in two separate causes for burglary as a Level 4 felony and robbery as a Level 5 felony. On May 23, 17-year-old T.J. messaged 16-year-old Aronen about buying drugs from him. Herzog agreed to drive Aronen to meet T.J. to sell him the drugs at an address located in "the trailer court," 710 Janie Street in Auburn, Indiana. Ex. Vol. I at 103.

At approximately 1:37 p.m., Herzog and Aronen arrived at the arranged meeting location, and Aronen messaged T.J. that he had arrived. T.J. and

Boese met Herzog and Aronen at Herzog's vehicle and "hopped in," Tr. Vol. III at 196, to discuss the purchase. Boese was carrying an unloaded handgun in his pocket. During the discussion, Herzog drove to the end of the street and turned around before parking. After T.J. "noticed [he] didn't have [his] wallet," Tr. Vol. III at 199, he and Boese exited the vehicle and walked "half of a football field" away, *id.* at 210, where Boese gave T.J. the handgun.

[5] When Boese and T.J. returned to Aronen's side of the vehicle, Boese "reached through the [front passenger-side] window, and he tried to take" Aronen's blue bag of drugs, Tr. Vol. III at 200, which he had across his chest and "around his neck," *id.* at 201. After a struggle, the bag ripped, and Boese (who had the blue bag in his hand) and T.J. "took off running . . . around the car." *Id.* at 203. During the struggle, Herzog, in an attempt to drive away, shifted the vehicle into neutral, and it began to roll forward. However, Herzog "los[t] interest in trying to drive away," removed his knife from the center console, Tr. Vol. IV at 223, and chased Boese and T.J. when they ran away with the bag.

[6] Herzog caught up to Boese and T.J. when they stopped between rows of trailers, and he swung his knife at T.J. without striking him. Boese started running again, splitting up with T.J. At approximately 1:51 p.m., T.J. returned to Boese's trailer alone.

[7] Meanwhile, Boese ran north between the trailers toward 1108 Irene Street. When Boese reached 1108 Irene Street, he "pound[ed] on the door" and yelled for help, saying he had been stabbed. Tr. Vol. II at 213. When resident Alyssa

Bolen opened the door, she "saw two guys standing there. One guy was . . . pretty much right by the door up on the porch, and then there was another one at the bottom of the steps," *id.*, approximately "four, five, six feet from" Boese and holding a blue bag, *id.* at 214. Bolen closed the door to ask another resident for help, and when Kylie Desantie came out from her bedroom, Bolen reopened the door and saw "the guy that was down on the ground take off running in a different direction." *Id.* at 216. Boese was bleeding heavily, and he told Bolen he was stabbed by "Preston" and "wanted his mom." *Id.* at 217. Bolen called 911 while Desantie began assisting Boese. Desantie "knew [Boese] was going to die as soon" as she saw him. *Id.* at 234. "Blood [was] pumping out of" Boese. *Id.* "He was panicked[,] scared[,] freaking out[,] super out of breath," *id.*, and "[b]egging for his mom," *id.* at 238. Boese told Desantie he had been stabbed and then "just kind of fell in on top of" her. *Id.* at 234. After they fell, Desantie looked toward the street and saw someone wearing a camouflage shirt "messing with" a blue bag and running away. *Id.* at 235.

[8] Despite first responders' efforts, Boese died from his injury on the sidewalk in front of 1108 Irene Street. Boese's mother walked up shortly thereafter and saw him "dead, laying on the ground." Tr. Vol. III at 56.

[9] After Herzog ran away from 1108 Irene Street with the recovered blue bag of drugs, he returned to his vehicle where Aronen was waiting. Herzog drove Aronen to Aronen's friend N.N.'s house; gave Aronen "the bag, the knife," and Herzog's bloody shorts; and "told [Aronen] to get rid of them." Tr. Vol. IV at 207.

At N.N.'s house, Aronen was carrying a white bag with some drugs and told N.N. and N.N.'s stepfather that "someone got robbed" in the "trailer park," Tr. Vol. III at 40, and that "they stabbed someone in the shoulder," *id.* at 41. After Aronen left, N.N. "checked [his] trash can," *id.* at 50, and found "a bloody bag, a bloody knife . . . THC, that white bag that [Aronen] left with, and bloody shorts," *id.* at 51. N.N. showed the items to his stepfather, who then took them to "the trailer park" to find a law enforcement officer. *Id.* at 42.

During the course of their investigation, law enforcement officers learned that Aronen, Herzog, and Preston were brothers. Officers went to Herzog's residence to execute a search warrant. In the washing machine, officers found a camouflage shirt "consistent with the description [they had] of the suspect['s] clothing." Tr. Vol. III at 17. Both Herzog's and Boese's DNA were on the shirt. The autopsy revealed that Boese sustained a stab wound to his chest that penetrated his left upper lung, causing his lung to collapse.

The State charged Herzog with murder.[1, 2] At trial, Bolen identified Herzog as the person she saw at the bottom of the stairs. T.J. testified that he did not remove the gun from his pocket after Boese gave it to him at any time during his interactions with Herzog. T.J. also testified to many of the facts as stated

---

[1] Ind. Code § 35-42-1-1(1).

[2] In Cause 17D01-2502-MR-000001, the State charged Aronen with murder, assisting a criminal as a Level 5 felony, and obstruction of justice as a Level 6 felony. Aronen pled guilty to assisting a criminal as a Level 5 felony, and the other two charges were dismissed.

above. Herzog argued that he acted in self-defense. In support, Herzog testified that he stabbed Boese at his vehicle when Boese moved toward him with a gun in his hand. When Herzog stabbed Boese, Boese dropped the gun, and T.J. picked it up, then T.J. and Boese ran away together before splitting up. Seeing that T.J. and Boese split up, Herzog decided to chase after Boese who was running away—despite the stab wound to his chest—with the bag of drugs. Herzog saw Boese stop at 1108 Irene Street without the bag, so he looked for the bag and found it under a vehicle parked at that address. Herzog did not call 911 to report the robbery or stabbing. Herzog admitted to taking his shirt off and putting it into his washing machine at his residence.

[13] The jury found Herzog guilty of voluntary manslaughter as a Level 2 felony, a lesser-included offense of murder, thereby rejecting his self-defense claim. The trial court sentenced Herzog to 28 years executed at the Indiana Department of Correction ("DOC"). This appeal ensued.

## Discussion and Decision

### 1. The State Presented Sufficient Evidence to Rebut Herzog's Self-Defense Claim

[14] Herzog challenges the sufficiency of the evidence rebutting his claim of self-defense. When a defendant challenges the sufficiency of the State's evidence rebutting the defendant's self-defense claim, "the standard of review remains the same as for any sufficiency of the evidence claim." *Turner v. State*, 253 N.E.3d 526, 533 (Ind. 2025) (quoting *Miller v. State*, 720 N.E.2d 696, 699 (Ind. 1999)).

"A conviction is supported by sufficient evidence if 'there is substantial evidence of probative value supporting each element of the offense such that a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt.'" *Hancz-Barron v. State*, 235 N.E.3d 1237, 1244 (Ind. 2024) (quoting *Willis v. State*, 27 N.E.3d 1065, 1066 (Ind. 2015)). This Court reviews only the evidence most favorable to the verdict and the reasonable inferences therefrom, and will reverse only where it is shown that "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Teising* [*v. State*], 226 N.E.3d [780,] 783 [(Ind. 2024)].

*Konkle v. State*, 253 N.E.3d 1068, 1090–91 (Ind. 2025). We do not reweigh the evidence or reassess witness credibility. *Id.* at 1090 (quoting *Teising*, 226 N.E.3d at 783).

[15] "Self-defense is a legal justification for what would otherwise be criminal conduct," *Turner*, 253 N.E.3d at 534 (citing *Larkin v. State*, 173 N.E.3d 662, 670 (Ind. 2021)), and is "a complete bar to conviction," *id.* (citing *Hill v. State*, 497 N.E.2d 1061, 1064 (Ind. 1986)). "Once the defendant invokes self-defense, the State has the burden to disprove beyond a reasonable doubt at least one element of the justification." *Id.* (citing *Hill*, 497 N.E.2d at 1064).

[16] Indiana's self-defense statute provides that a "person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force." Ind. Code § 35-41-3-2(c). If a person "reasonably believes that [deadly] force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony," then the person "is justified in using

deadly force" and "does not have a duty to retreat." *Id.* Importantly, to assert self-defense, the person must have been "in a place where he had a right to be" and must have "acted without fault." *Turner*, 253 N.E.3d at 541 (quoting *Larkin*, 173 N.E.3d at 670). "A person who provokes, instigates, or participates willingly in the violence does not act without fault for the purposes of self-defense." *Id.* (quoting *Richardson v. State*, 79 N.E.3d 958, 964 (Ind. Ct. App. 2017), *trans. denied*).

[17] Herzog contends that the State did not present sufficient evidence to rebut all three elements of his self-defense claim. Assuming arguendo that Herzog demonstrated all three elements to claim self-defense, he has not established that the State failed to present sufficient evidence to rebut at least one of those elements.

[18] Herzog's arguments on appeal are essentially requests for us to credit Herzog's version of the events over the version presented by the State's witnesses. Herzog's opportunity to make such an argument occurred during trial. On appeal, we do not reweigh the evidence and reassess witness credibility; instead, we consider the evidence most favorable to the verdict. *See Konkle*, 253 N.E.3d at 1090 (quoting *Teising*, 226 N.E.3d at 783). For instance, Herzog argues that he "did not provoke, instigate, or participate in the violence" because he "attempted to leave the scene in his vehicle" and was merely responding to Boese's "actions and violence." Appellant's Br. at 16–17. The probative evidence and reasonable inferences supporting the verdict show that Boese did not have the handgun when he and T.J. stole the drugs from Aronen, and T.J.

never pulled it out of his pocket or aimed it at Herzog. After Boese and T.J. ran away with the drugs, Herzog could have driven away, but he "los[t] interest" in doing so and chased after them, Tr. Vol. IV at 223. Herzog's decision to chase the two minors shows a lack of fear and an initiation of violence that culminated with his stabbing Boese. Herzog then asked Aronen to dispose of evidence and never reported the incident to law enforcement. A reasonable jury could conclude that Herzog was angry about the robbery, chased after Boese and stabbed him to recover the stolen bag of drugs, and had Aronen dispose of evidence. *See Orozco v. State*, 146 N.E.3d 1038, 1041–42 (Ind. Ct. App. 2020) (concluding defendant's flight and disposal of murder weapon supported jury's rejection of self-defense claim), *trans. denied*. Considering only the probative evidence and reasonable inferences supporting the verdict, the State presented sufficient evidence to rebut Herzog's claim that he acted without fault. *See Turner*, 253 N.E.3d at 541.

[19] Although Herzog offered a different version of events during his testimony, the jury was free to disbelieve his self-serving testimony that he stabbed Boese near his vehicle when Boese came toward him with the handgun. *See Norris v. Norris*, 275 N.E.3d 505, 511 (Ind. 2026) (quoting *Thompson v. State*, 804 N.E.2d 1146, 1149 (Ind. 2004)). The jury heard this testimony and clearly rejected it. Based on the foregoing, we cannot say the State failed to present sufficient evidence to rebut Herzog's claim of self-defense.

## 2. The Trial Court Did Not Abuse Its Discretion in Identifying Mitigating Factors

[20] Herzog contends the trial court abused its discretion by not identifying certain mitigating factors at sentencing. Our Supreme Court has explained the standard of review for such a claim as follows:

> We review a sentencing court's decision about whether to find a mitigating factor for an abuse of discretion. *Carter v. State*, 711 N.E.2d 835, 838–39 (Ind. 1999). "An allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record." *Id.* at 838. Sentencing courts are "under no duty to deem mitigating every factor" advanced "simply because it [was] supported by some evidence in the record." *Bivins v. State*, 642 N.E.2d 928, 952 (Ind. 1994). And "the sentencing judge is not obligated to explain why [they have] chosen not to make a finding of mitigation . . . . Moreover, the [sentencing] court is not obligated to credit or weigh the defendant's evidence of mitigating circumstances the same way the defendant does." *Id.* (quotations omitted).

*Russell v. State*, 234 N.E.3d 829, 847–48 (Ind. 2024) (alterations in original), *cert. denied*.

[21] At the sentencing hearing, the trial court found three aggravating factors: (1) Herzog's "history of criminal delinquent behavior," Tr. Vol. V at 101; (2) Herzog had violated probation in two other causes by committing the instant offense; and (3) Herzog knowingly committed a crime of violence in the presence of a minor who was not a victim of the offense. The trial court found two mitigating factors: (1) Herzog was diagnosed with post-traumatic stress

disorder; and (2) Herzog acted under strong provocation in committing the offense. In weighing the mitigating value of Herzog's acting under strong provocation, the trial court considered that Herzog also benefited from the jury verdict itself finding him not guilty of murder. *Id.* The trial court concluded the aggravating factors outweighed the mitigating factors.

[22] On appeal, Herzog asserts the trial court failed to consider or put enough "emphasis" on the following ten circumstances he believes to be mitigators: (1) he had autism, (2) he "had a poor childhood filled with abuse," (3) he had PTSD, (4) he "was a victim of a robbery," (5) the "crime was unlikely to reoccur," (6) "the victim of the crime induced or facilitated the same," (7) "there was strong evidence presented as to Herzog's self-defense claim," (8) he "acted under strong provocation," (9) he was willing to pay restitution, and (10) he accepted responsibility.[3] Appellant's Br. at 22 (citing Tr. Vol. V at 76–151).

[23] First, Herzog misrepresents the record. The trial court expressly found that Herzog's PTSD was a mitigating factor and afforded it "some weight." Tr. Vol. V at 101. The trial court also found that Herzog acted under strong provocation and that the additional proffered mitigating factors "roll[ed] up all under those

_____

[3] In support of this argument, Herzog *attempts* to cite to the whole sentencing hearing, *see* Appellant's Br. at 22 (citing Tr. Vol. V at 76–151); however, he does not specifically direct our attention to any portion of the transcript where he presented these purported mitigating factors for the trial court's consideration. Moreover, Volume V of the transcript ends at page 106, so Herzog cites to 45 pages that do not exist. We remind counsel that this court will not search the record to find a basis for a party's argument. *Carter ex rel. CNO Fin. Grp., Inc. v. Hilliard*, 970 N.E.2d 735, 755 (Ind. Ct. App. 2012) (citing *Nealy v. Am. Family Mut. Ins.*, 910 N.E.2d 842, 845 n.2 (Ind. Ct. App. 2009), *trans. denied*).

same facts, and [found] them within that same mitigator," which it afforded "little weight." *Id.* We therefore cannot agree that the trial court "blatantly ignor[ed] these obvious mitigating factors," Appellant's Br. at 22. Second, it is not a viable appealable issue to claim that the trial court did not give enough weight to a proposed mitigator. *See Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007).

[24] Additionally, Herzog does not argue that the evidence supporting his ten allegedly mitigating factors is significant or clearly supported by the record. Appellant's Br. at 22. Herzog thus fails to support his challenge with cogent reasoning, as required by Appellate Rule 46(A)(8)(a). *See Russell*, 234 N.E.3d at 847 (citing *Carter*, 711 N.E.2d at 838–39). Based on the record and briefing before us, we cannot say that the trial court abused its discretion in identifying mitigating factors.

### 3. Herzog's Sentence Is Not Inappropriate under Appellate Rule 7(B)

[25] Finally, Herzog argues his sentence is inappropriate under Appellate Rule 7(B) and should be revised. The Indiana Constitution authorizes us to independently review and revise a trial court's sentencing decision. *Tillett v. State*, 278 N.E.3d 359, 366 (Ind. 2026) (citing Ind. Const. art. 7, §§ 4, 6). That authority is implemented through Appellate Rule 7(B), which permits us to revise a sentence if, "after due consideration of the trial court's decision," we conclude "that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Id.* (quoting App. R. 7(B)).

[26]     The defendant bears the burden of producing compelling evidence that "his or her sentence has met the inappropriateness standard of review." *Tillett*, 278 N.E.3d at 366 (alteration omitted) (quoting *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006)). A defendant "need not 'necessarily *prove*'" that the sentence is inappropriate based on *both* the nature of his offense *and* his character, *Lane v. State*, 232 N.E.3d 119, 126 (Ind. 2024) (emphasis in original) (quoting *Connor v. State*, 58 N.E.3d 215, 219 (Ind. Ct. App. 2016)), but "to the extent the evidence on one prong militates against relief, a claim based on the other prong must be all the stronger to justify relief," *id.* at 127 (citing *Connor*, 58 N.E.3d at 220).

[27]     Whether a sentence is inappropriate "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Tillett*, 278 N.E.3d at 366 (quoting *McCain v. State*, 148 N.E.3d 977, 985 (Ind. 2020)). "We generally defer to the trial court's decision," *id.* (citing *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012)), but "we are not limited to the mitigators and aggravators found by the trial court," *Brown v. State*, 10 N.E.3d 1, 4 (Ind. 2014). "Our role is to 'leaven the outliers,' which means we exercise our authority only in 'exceptional cases.'" *Tillett*, 278 N.E.3d at 366 (quoting *Russell*, 234 N.E.3d at 856).

[28]     A trial judge may impose any sentence within the statutory range without regard to the existence of aggravating or mitigating factors. *Anglemyer*, 868 N.E.2d at 489. When considering the nature of the offense, we start with the advisory sentence. *Brown*, 10 N.E.3d at 4 (citing *Anglemyer*, 868 N.E.2d at 494).

Here, Herzog was convicted of and sentenced on one Level 2 felony. "A person who commits a Level 2 felony shall be imprisoned for a fixed term of between ten (10) and thirty (30) years, with *the advisory sentence being seventeen and one-half (17 ½) years*." I.C. § 35-50-2-4.5 (emphasis added). On his Level 2 felony conviction, the trial court sentenced Herzog to 28 years executed at the DOC.

[29] Where, as here, the trial court deviated from the advisory sentence, one factor we consider is "whether there is anything more or less egregious about the offense committed by the defendant that makes it different from the 'typical' offense accounted for by the legislature when it set the advisory sentence." *T.A.D.W. v. State*, 51 N.E.3d 1205, 1211 (Ind. Ct. App. 2016) (quoting *Holloway v. State,* 950 N.E.2d 803, 806–07 (Ind. Ct. App. 2011)), *as amended* (May 26, 2023). We also consider whether the offense was "accompanied by restraint, regard, and lack of brutality." *Tillett*, 278 N.E.3d at 366 (quoting *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015)).

[30] Herzog and Aronen arranged to sell drugs to Boese and T.J., both of whom were minors. When Boese and T.J. tried to steal the drugs, Herzog chased after them with a knife and stabbed Boese in the chest. Rather than render aid to Boese or call for help, Herzog fled with the recovered drugs and asked Aronen to dispose of evidence for him. Herzog left Boese to die on a stranger's sidewalk in considerable pain and "[b]egging for his mom," Tr. Vol. II at 238. Boese's mother—who suspected something was wrong after T.J. returned to her house without Boese—walked to the marked crime scene and "saw [her] son

dead, laying on the ground." Tr. Vol. III at 56. Nevertheless, Herzog argues that the nature of the offense warrants revision because "he stabbed [Boese] only one time." Appellant's Br. at 19. Regardless of how many times Herzog stabbed Boese, the fact remains that Herzog killed Boese and caused significant damage to others. Nothing about the nature of the offense suggests Herzog showed any restraint, regard, or lack of brutality.

[31]     In considering the character of the offender, "we engage in a broad consideration of a defendant's qualities," *T.A.D.W.*, 51 N.E.3d at 1211 (citing *Aslinger v. State*, 2 N.E.3d 84, 95 (Ind. Ct. App. 2014), *clarified on other grounds on reh'g*), including whether the defendant has "substantial virtuous traits or persistent examples of good character," *Tillett*, 278 N.E.3d at 366 (quoting *Stephenson*, 29 N.E.3d at 122).

[32]     Herzog was 21 years old when he killed Boese. Herzog has two prior adult convictions stemming from two separate causes—burglary as a Level 4 felony and robbery as a Level 5 felony. Herzog was on probation in both causes when he agreed to participate in a drug deal that resulted in him killing Boese. While Herzog was incarcerated pending trial in this cause, he committed more than ten violations in the DeKalb County Jail, including harassment and disorderly conduct. The presentence investigation report identifies Herzog as being "in the HIGH risk category to reoffend." Appellant's App. Vol. II at 243.

[33]     Herzog argues that his familial support and mental health issues support revising his sentence. The record shows that Herzog suffers from mental health

issues, including PTSD.  However, a finding of mental illness alone does not make a sentence inappropriate.  *See Oberhansley v. State*, 208 N.E.3d 1261, 1271–72 (Ind. 2023).  We still must look at the individual's entire character, and Herzog's "'history of criminal conduct' weighs against relief," *id.* at 1272 (quoting *Anglemyer*, 868 N.E.2d at 494).

[34]     Based on the nature of Herzog's offense and his character, we cannot say that Herzog has produced compelling evidence demonstrating that the nature of his offense or his character renders his sentence inappropriate.  *See Lane*, 232 N.E.3d at 126–27.

## Conclusion

[35]     In sum, the State presented sufficient evidence to rebut Herzog's self-defense claim, the trial court did not abuse its discretion in identifying mitigating factors, and Herzog's sentence is not inappropriate under Appellate Rule 7(B). We therefore affirm the trial court on all issues raised.

[36]     Affirmed.

Tavitas, C.J., and Bradford, J., concur.

ATTORNEY FOR APPELLANT
Justin R. Wall
Wall Legal Services
Huntington, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Indiana Attorney General

Brandyn L. Arnold
Deputy Attorney General
Indianapolis, Indiana